# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | |
|---|---|
| SCHUCHMAN/SAMBERG INVESTMENTS, INC., <br>     Plaintiff/Counter Defendant, <br><br> v. <br><br> HOOSIER PENN OIL CO. INC., UNIVAR USA INC. f/k/a VAN WATERS & ROGERS INC., UNION OIL COMPANY OF CALIFORNIA f/k/a THE PURE OIL COMPANY, and BP CORPORATION NORTH AMERICA INC. f/k/a STANDARD OIL COMPANY, <br>     Defendants/Counter Claimants. <br> _____ <br> UNIVAR USA INC., <br>     Cross Claimant, <br><br> v. <br><br> UNION OIL COMPANY OF CALIFORNIA, BP CORPORATION NORTH AMERICA INC., and HOOSIER PEEN OIL CO., INC., <br>     Cross Defendants. <br> _____ <br> HOOSIER PENN OIL CO., INC., <br>     Cross Claimant, <br><br> v. <br><br> UNIVAR USA INC., <br>     Cross Defendant. | Cause No. <br> 1:13-cv-0107-LJM-DKL |

## AMENDED COMPLAINT[1]

Plaintiff Schuchman/Samberg Investments, Inc., for its Amended Complaint against

Defendants, Hoosier Penn Oil Co., Inc. ("Hoosier Penn"), Univar USA, Inc. f/k/a Van Waters &

Rogers Inc. ("Univar"), Union Oil Company of California f/k/a The Pure Oil Company ("Union

---

[1] This Amended Complaint is filed pursuant to the agreement of the Parties and pursuant to leave granted by the Court on April 12, 2017. (*See* 4/12/17 Docket Text (docket #112); 4/12/17 Approved as Amended Case Management Plan, p. 8 (docket #113).)

Oil"), and BP Corporation North America Inc. f/k/a Standard Oil Company ("BP") (collectively "Defendants"), alleges and states as follows:

## JURISDICTION AND VENUE

1. This lawsuit asserts a claim under Section 107(a) of the Comprehensive Environmental Response Compensation and Liability Act, 42 U.S.C. §§ 9607(a) ("CERCLA" or "Superfund"), for costs incurred and to be incurred by Plaintiff in responding to releases of hazardous substances, including but not limited to chlorinated compounds, solvents, polycyclic aromatic hydrocarbons, and commingled, concentrated and/or contaminated regulated substances. This lawsuit also requests declaratory judgment against the Defendants under 28 U.S.C. § 2201 and Federal Rule of Civil Procedure 57. The CERCLA Claim and request for Declaratory Judgment pose federal questions; therefore, this Court has jurisdiction pursuant to 28 U.S.C. § 1331.

2. This lawsuit also asserts a claim under Indiana's Underground Storage Tank Act, Indiana Code §§ 13-23-13-1 *et seq.* ("USTA") for costs incurred and to be incurred by Plaintiffs in responding to the release of hazardous substances from underground storage tanks at the subject property ("USTA Claim"). The USTA Claim is so related to the CERCLA Claim that it forms part of the same case or controversy; therefore, this Court has supplemental jurisdiction over the USTA Claim pursuant to 42 U.S.C. § 1367(a).

3. Venue is proper in this judicial district under 42 U.S.C. § 9613(b) and 28 U.S.C. § 1391 because the property at issue is located in this Court's district and division and the releases or threatened releases of hazardous substances that give rise to the claims in this action occurred in this Court's district and division.

## THE PARTIES

4. Plaintiff is an Indiana corporation with its principal place of business located at 1427 West 86th Place, #182, Indianapolis, Indiana.

5. Defendant Hoosier Penn is an Indiana corporation with its principal place of business located at 1501 Polco Street, Indianapolis, Indiana.

6. Defendant Univar is a Washington corporation doing business in Indiana.

7. Defendant Union Oil is a California corporation doing business in Indiana.

8. Defendant BP is an Indiana corporation with its principal place of business located at 501 Westlake Park Boulevard, Houston, Texas. BP does business in the State of Indiana.

## FACTUAL ALLEGATIONS

9. Plaintiff has owned the real property located at 850 South Keystone Avenue, Indianapolis, Indiana ("Site").

10. From approximately the 1920s until the 1940s, the Site was owned by Standard Oil Company of Indiana ("Standard Oil").

11. Standard Oil's operations at the Site utilized three large warehouse or garage buildings and a large above ground tank farm which included at least six vertical above ground storage tanks (ASTs) and seven horizontal ASTs. Standard Oil's operations at the Site also involved use of one or more underground storage tanks ("USTs").

12. Standard Oil owned and operated the Site for many years, all prior to the advent of environmental laws which aimed to regulate the storage, handling and disposal of hazardous substances at facilities such as that operated at the Site by Standard Oil.

13. Standard Oil stored and handled large quantities of hazardous substances at the Site.

14. Standard Oil emitted, released and/or disposed of large quantities of hazardous substances into the soil and groundwater at the Site.

15. In 1985, Standard Oil's name changed to Amoco Corporation. Amoco Corporation later became BP Amoco Corporation through a merger and is now known as BP Corporation North America (also referred to herein as BP). BP is the corporate successor to the liabilities of Standard Oil.

16. In the early 1940s, The Pure Oil Company acquired the Site from Standard Oil.

17. A 1943 site plan identifies the Site as The Pure Oil Company Bulk Plant, and it shows a tank farm of at least seven 17,500 gallon horizontal ASTs and six large vertical ASTs. At least five other ASTs were also present on the property. In addition, there were at least six 1,000 gallon USTs identified as dump tanks south of the AST tank farm and oil platform. A UST was also shown in the northwest corner of the AST tank farm, and one additional UST was shown between the Garage Building and Office Warehouse Building.

18. The Site was owned and operated by The Pure Oil Company and its successor by merger, Union Oil Company (collectively "UOC"), until it was sold in about 1975.

19. The majority of the operations at the Site by UOC were prior to the advent of environmental laws which aimed to regulate the storage, handling and disposal of hazardous substances at facilities such as that operated at the Site by UOC.

20. UOC stored and handled large quantities of hazardous substances at the Site. UOC's operations at the Site involved the use of both ASTs and USTs.

21. UOC emitted, released and/or disposed of large quantities of hazardous substances into the soil and groundwater at the Site.

22. UOC was reorganized in 1983 into the Union Oil Company of California ("Union Oil"), which became an operating subsidiary of a new Delaware-based holding company, Unocal Corporation.

23. Union Oil is the corporate successor to the liabilities of The Pure Oil Company and UOC.

24. From approximately 1975 or 1976 until at least 1978, the Site was leased by and operated by an entity or entities known as Lynn Solvents Corp., Lynn Chemical and/or Van Waters & Rogers Inc., a/k/a Van Waters & Rogers Solvents.

25. Univar is the corporate successor to the liabilities of Wm. Lynn Chemical Company, which was also known as Lynn Solvents or Lynn Chemical, and is also the corporate successor to the liabilities of Van Waters & Rogers, Inc. (collectively "Univar Entities").

26. The Univar Entities operated a chemical distribution facility at the Site in the mid- to late-1970s.

27. While some environmental laws existed at the time, the majority of the operations at the Site by the Univar Entities were prior to the more stringent environmental laws in place today which aim to regulate the storage, handling and disposal of hazardous substances at facilities such as that operated at the Site by the Univar Entities.

28. As part of the operation of that facility, the Univar Entities stored large volumes of hazardous substances, including, but not limited to industrial solvents, including chlorinated solvents. The Univar Entities' operations involved the use of both ASTs and USTs.

29. The Univar Entities emitted, released and/or disposed of large quantities of hazardous substances into the soil and groundwater at the Site.

30. From approximately 1979 until approximately 1995, Hoosier Penn leased the Site and operated it as a chemical and fuel distribution center.

31. While some environmental laws existed at the time, the earlier operations at the Site by Hoosier Penn were prior to the implementation of more stringent environmental laws in place today which aim to regulate the storage, handling and disposal of hazardous substances at facilities such as that operated at the Site by Hoosier Penn.

32. Hoosier Penn stored and handled large quantities of hazardous substances at the Site. Hoosier Penn's operations involved the use of both ASTs and USTs.

33. Hoosier Penn emitted, released and/or disposed of large quantities of hazardous substances into the soil and groundwater at the Site.

34. In 1995, the Site was leased by the Plaintiff, Surplus Acquisition and Recycling Consultants of America, Inc. d/b/a SARCO, n/k/a Schuchman/Samberg Investments, Inc. Plaintiff purchased the Site in 1998.

35. As a result of the historical activities conducted at the Site by Defendants and/or Defendants' predecessors and/or affiliates, the Site's soil and groundwater are contaminated by multiple hazardous substances, including but not limited to chlorinated compounds, solvents, polycyclic aromatic hydrocarbons, and commingled, concentrated and/or contaminated petroleum products ("Environmental Contamination").

36. On February 21, 2007, the Indiana Department of Environmental Management ("IDEM") demanded that Plaintiff must address the Environmental Contamination.

37. Plaintiff has incurred costs investigating and remediating the Environmental Contamination in response to IDEM's demand and will incur additional costs for investigation and remediation of the Environmental Contamination.

## COUNT I
## (COST RECOVERY UNDER CERCLA SECTION 107)

38. Plaintiff repeats and re-alleges paragraphs 1 through 37 as though set forth fully herein.

39. The Site is a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

40. Each of the Defendants is a "person" within the meaning of Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

41. Each of the Defendants stored, located and used "hazardous substances" – within the meaning of Section 101(14) of CERCLA, 42 U.S.C. § 9601(14) – at the Site.

42. Releases and threatened releases of hazardous substances have occurred at and from the Site and into the environment.

43. Each of the Defendants owned the Site and/or operated at the Site at the time of disposal and release of hazardous substances at and from the Site.

44. Plaintiff has incurred necessary costs of response that are consistent with the National Contingency Plan as a result of the release or threatened release of hazardous substances at and/or from the Site.

45. Plaintiff will continue to incur necessary costs of response as a result of the release or threatened release of hazardous substances at and/or from the Site.

46. The Defendants are liable to Plaintiff under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), for any and all response costs incurred and to be incurred by Plaintiff as a

result of the release or threatened release of hazardous substances at and from the Site and for attorneys' fees and interest as allowed under CERCLA.

## COUNT II
### (THE INDIANA USTA)

47. Plaintiff repeats and re-alleges paragraphs 1 through 46 as though set forth fully herein.

48. Some or all of the Plaintiff's actions required by IDEM are corrective actions resulting from releases of regulated substances from the USTs at the Site, and Plaintiff has incurred corrective action costs as a result.

49. Each of the Defendants owned and/or operated one or more USTs at the time of a release at the Site.

50. Each Defendant is liable to the Plaintiff as a result of releases from one or more USTs at the Site.

51. Pursuant to Ind. Code § 13-23-13-8, Plaintiff is entitled to recover corrective action costs, reasonable attorneys' fees and court costs from the Defendants.

## COUNT III
### (DECLARATORY JUDGMENT)

52. Plaintiff repeats and re-alleges paragraphs 1 through 51 as though set forth fully herein.

53. Plaintiff seeks a Declaratory Judgment against the Defendants pursuant to 28 U.S.C. § 2201 and Federal Rule of Civil Procedure 57 that the Defendants are and will be liable for future costs, expenses, damages, interest and attorneys' fees which are necessary to address and respond to the hazardous substances that continue to exist at or near the Site.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Schuchman/Samberg Investments, Inc. respectfully prays that the Court enter judgment in its favor and against Defendants, Hoosier Penn Oil Co., Inc., Univar USA, Inc. f/k/a Van Waters & Rogers Inc., Union Oil Company of California f/k/a The Pure Oil Company, and BP Corporation North America Inc. f/k/a Standard Oil Company, and provide the following relief:

1. Order the Defendants to reimburse Plaintiff for all response costs and corrective action costs incurred by Plaintiff related to the release or threatened release of hazardous substances or release of regulated substances at or from the Site;

2. Order the Defendants to reimburse Plaintiff for all reasonable attorneys' fees and costs incurred by Plaintiff and to pay interest;

3. Declare that the Defendants are and will be liable for all future costs, expenses, damages, interest and attorneys' fees to address and respond to the hazardous substances and regulated substances at, near or emanating from the Site; and

4. Grant Plaintiff all other relief just and proper in the premises.

Respectfully submitted,

HATCHETT & HAUCK LLP


s/ Michael J. Reeder
David L. Hatchett, #19383-49
Michael J. Reeder, #21794-49
111 Monument Circle, Suite 301
Indianapolis, Indiana 46204-5124
david.hatchett@h2lawyers.com
mike.reeder@h2lawyers.com
Main:   (317) 464-2620
Fax:     (317) 464-2629

*Counsel for Plaintiff Schuchman/Samberg Investments, Inc.*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on May 5, 2017 a copy of the foregoing was filed electronically. Notice of this filing will be sent to the following parties (if registered with the Court) by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

John M. Kyle III
BARNES & THORNBURG LLP
11 South Meridian Street
Indianapolis, Indiana 46204

Sean P. Burke
Raymond J. Biederman
MATTINGLY BURKE COHEN & BIEDERMAN LLP
3646 N. Washington Blvd.
Indianapolis, Indiana 46205

*Attorneys for Defendant Univar USA Inc. f/k/a Van Waters & Rogers Inc.*

Todd J. Janzen
Brianna J. Schroeder
Janzen Agricultural Law LLC
8425 Keystone Crossing, Suite 111
Indianapolis, Indiana 46240

*Attorneys for Defendant Hoosier Penn Oil Co., Inc.*

Dale W. Eikenberry
Allison W. Gritton
WOODEN & MCLAUGHLIN LLP
One Indiana Square, Suite 1800
Indianapolis, Indiana 46204

*Attorneys for Defendant BP Corporation North America Inc. f/k/a Standard Oil Company*

Frank J. Deveau
Melissa A. Gardner
TAFT STETTINIUS & HOLLISTER LLP
One Indiana Square, Suite 3500
Indianapolis, Indiana 46204

*Attorneys for Defendant Union Oil Company of California f/k/a The Pure Oil Company*

                                                      s/ Michael J. Reeder